**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| Brent Kehler, | | |
| | Plaintiff, | |
| v. | | Case No. 21-3251-HLT-ADM |
| CO Timothy Ward, *et al*., | | |
| | Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS
TIMOTHY WARD, LLOYD RUSH, THOMAS RUSH, JASON TROLL, ELIZABETH
RICE, ANGELA HANNAH, APRYL LIGGETT, SARA DELGADO, SHANNA ADAMS
DRINKARD, AND MICHELLE KROCK**

Under the Supreme Court's framework analyzing *Bivens* cases, as clarified in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), Plaintiff's claims against the Individual Defendants should be dismissed. Although extending *Bivens* has long been a "disfavored judicial activity," the Supreme Court recently emphasized that a *Bivens* claim is unavailable "in all but the most unusual circumstances." *Id*. at 1800, 1803; *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Even cases involving "parallel circumstances" to *Bivens*, *Carlson*, and *Passman*, warrant rigorous scrutiny and must satisfy the Court's modern "analytic framework" for implied causes of action. *Egbert*, 142 S. Ct. at 1809. Plaintiff's claims against the Individual Defendants cannot survive this modern framework. His *Bivens* allegations present a context that diverges meaningfully from the three past *Bivens* cases and special factors exist indicating that Congress is better equipped than the Judiciary to create this remedy.

Further, the Individual Defendants are entitled to qualified immunity as Plaintiff has failed to plead facts that plausibly state a claim for a violation of his Eighth Amendment rights. And finally, even if Plaintiff could bring a *Bivens* claim and has adequately stated a claim, his claims

against Defendants Ward, Thomas Rush, Llyod Rush, Adams Drinkard, and Krock are barred by the applicable statute of limitations and should be dismissed. In sum, only Plaintiff's Federal Tort Claims Act (FTCA) claim against the United States should proceed in this case—all other claims and Defendants should be dismissed.[1]

## Factual and Procedural Background

### I.    Plaintiff's Fifth Amended Complaint

On June 2, 2022, Plaintiff filed his Fifth Amended Complaint, including claims against the United States, the 10 Individual Defendants currently named in this lawsuit, "COs John or Jane Does 1 through 10", and "Jail Medical Staff John or Jane Does 1 through 10." Doc. 29. Plaintiff pursues a claim against the United States under the FTCA "for negligence and professional malpractice in connection with medical care provided to Plaintiff" at USP Leavenworth in November 2019, and *Bivens* claims against the Individual Defendants for alleged violations of his Eighth Amendment right to adequate medical care. Doc. 29, ¶¶ 1-2, 17-24. This motion addresses only Plaintiff's *Bivens* claims.

Plaintiff's *Bivens* claims are set out in paragraphs 15-32 of the Fifth Amended Complaint. Plaintiff alleges that he was housed in the Special Housing Unit (SHU) at USP Leavenworth in November 2019, and that on or about November 11, 2019, the SHU flooded with wastewater. Doc. 29, ¶¶ 15-17. While attempting to clean his cell, "Plaintiff slipped and fell . . . then started experiencing hip pain." *Id*. at ¶ 17. Plaintiff alleges that between November 11 and 15, 2019, his pain worsened, and over that period he "repeatedly asked" numerous nursing and correctional

---

[1] While Plaintiff's Fifth Amended Complaint appears only to assert individual-capacity claims against the Individual Defendants, to the extent Plaintiff pursues a *Bivens* or other constitutional claim against the Individual Defendants in their official capacity, this Court lacks subject-matter jurisdiction over any such claim. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (recognizing *Bivens* claims may only proceed against a federal official in his or her individual capacity); *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994) (holding actions for constitutional torts may not lie against the United States).

officer (CO) Defendants "for medical assistance when they came to his cell to change his Lidocaine patch." *Id*. at ¶ 18. Plaintiff was seen by Defendant Krock on or about November 15, 2019, during which Plaintiff informed Defendant Krock "that he could not walk and might 'have abone [sic] loose in his hip.' " *Id*. at ¶ 19. "Defendant Krock considered prescribing Tylenol but decided it was counter indicated by [Plaintiff's] blood work," and instead "prescribed warm showers and stretching and instructed him not to 'overuse' his hip." *Id*.

Plaintiff claims his pain and ability to move his lower extremities worsened over the next week to the point where he could not get out of bed and his cellmate had to feed him. *Id*. at ¶ 20. Plaintiff claims he asked numerous nurse and CO Defendants "for medical assistance when they came to his cell to change his Lidocaine patch," and that they provided none. *Id*. Plaintiff claims that toward the end of the period between November 11 and November 22, he "did not get out of bed or shower for several days." *Id*. at ¶ 21. Plaintiff also claims that several Defendants came to his "cell at least twice per day to administer medications to" his cellmate, and that Plaintiff "pleaded with them to get him some help at those times as well, and they did nothing." *Id*. at ¶ 22.

On November 22, 2019, jail staff carried Plaintiff out of his cell on a stretcher and custody staff reported to Defendant Krock that Plaintiff could not move. *Id*. at ¶ 23. "Plaintiff was taken to St. Luke's Hospital where he was diagnosed with Spinal Epidural Abscess necessitating C2-C6 laminectomy and causing paraplegia (flaccid paralysis of the lower extremities)." *Id*. at ¶ 24.

Plaintiff claims the Individual Defendant's actions surpass "mere negligence" and that all Individual Defendants "knew of, and disregarded, a substantial risk of serious harm to Plaintiff's health and safety." *Id*. at ¶ 29.

## II.    Plaintiff's first five Complaints and the Defendants named therein

On October 28, 2021, Plaintiff filed this lawsuit naming "CO Ward (first name unknown), CO Rush-1 (first name unknown), CO Rush-2 (first name unknown), COs John or Jane Does 1 through 10, Jail Nurse Davis (first name unknown), Jail Nurse Nelson (first name unknown, and other Jail Medical Staff John or Jane Does 1 through 10."  Doc. 1.  On November 4, 2021, Plaintiff filed an Amended Complaint.  Doc. 3.  The Amended Complaint did not add complete names for the unknown defendants, but added numerous names, including: (1) Jail Nurse Jason Troll, (2) Jail Nurse Elizabeth Rice, (3) Jail Nurse Angela Hannah, (4) Jail Nurse Apry[l] Liggett, (5) Jail Nurse C. Jarrett (full first name unknown), (6) Jail Nurse Sara Delgado, (7) Jail Nurse Andrew Mackey, (8) Jail Nurse R. White (full first name unknown), (9) Jail Nurse S. Adams (full first name unknown), (10) Jail Nurse A. Ruiz (full first name unknown), and (11) Jail Nurse V. Hicks (full first name unknown).

Plaintiff filed his Second Amended Complaint on December 2, 2021—more than two years after the events in question.  Doc. 9.  The Second Amended Complaint again did not add first names for COs Ward, Rush-1, Rush-2, or S. Adams, but added for the first time Defendant Michelle Krock.  On December 13, 2021, Plaintiff filed a Third Amended Complaint removing several defendants and naming as defendants (1) CO Timothy Ward, (2) CO Eric Rush, (3) CO Thomas Rush, (4) Jail Nurse Jason Troll, (5) Jail Nurse Elizabeth Rice, (6) Jail Nurse Angela Hannah, (7) Jail Nurse Apry[l] Liggett, (8) Jail Nurse Sara Delgado, (9) Shanna Drinkard-Adams, (10) Jail Nurse Michelle Krock, (11) COs John or Jane Does 1 through 10 and (12) Jail Medical Staff John or Jane Does 1 through 10.  Doc. 10.  Plaintiff filed his Fourth Amended Complaint on February 11, 2022, which removed CO Eric Rush and added CO Lloyd Rush.  Doc. 13.

## Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Fryer v. Johnson Cty. Sheriff Dep't*, No. 2:22-CV-02079-HLT, 2022 WL 3211427, at *2 (D. Kan. Aug. 8, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible if it is accompanied by sufficient factual content to allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted). "The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully,' but it 'is not akin to a probability requirement.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted). "In undertaking this analysis, a court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions." *Id.* (citation omitted). "Likewise, conclusory statements are not entitled to the presumption of truth." *Id.* (citation omitted).

"To obtain dismissal at the Rule 12(b)(6) stage based on the statute of limitations, the allegations on the face of the complaint surrounding the date of accrual must 'make clear that the right sued upon has been extinguished.' " *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)). "If from the complaint, 'the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law' suitable for resolution at the motion to dismiss stage." *Id.* (quoting *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995)) (alterations in original).

<u>**Argument**</u>

Under the Supreme Court's recent decision in *Egbert*, which clarified the framework for assessing the viability of a *Bivens* action, Plaintiff's claims against the Individual Defendants must be dismissed. Further, the Individual Defendants are entitled to qualified immunity as Plaintiff has failed to allege facts that constitute a violation of the Eighth Amendment. Finally, even if Plaintiff could bring an action against Defendants Timothy Ward, Lloyd Rush, Thomas Rush, Shanna Adams Drinkard, and Michelle Krock, Plaintiff failed to adequately name these defendants prior to the expiration of the statute of limitations and such claims should be dismissed.

**I.      The Court should decline to extend a *Bivens* remedy here.**

The threshold issue in this case is whether the Individual Defendants may be sued for damages under *Bivens* and its progeny. Because recognizing a *Bivens* remedy in this case is foreclosed, the Court should dismiss all claims against the Individual Defendants.

> *A.   Creation of the* **Bivens** *claim,* **Egbert,** *and the modern* **Bivens** *framework*

In *Ziglar*, the Supreme Court summarized the creation of the *Bivens* remedy and the Court's subsequent retreat from the now disfavored remedy. In 1871, Congress passed the statute later codified at 42 U.S.C. § 1983, which created a private right of action for "money damages if a state official violates [a person's] constitutional rights." *Ziglar,* 137 S. Ct. at 1854. "Congress did not create an analogous statute for federal officials." *Id.* Approximately 100 years later, the Supreme Court decided *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and "under general principles of federal jurisdiction," authorized an implied cause of action and remedy for violations of the Fourth Amendment by federal officers. *Id.* Over the following decade, the Supreme Court recognized an implied *Bivens* claim in only two other contexts. *Id.*; *see Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a claim by an administrative assistant against a

Congressman for firing her because she was a woman); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a claim where jailers failed to treat a prisoner's known medical condition, asthma, resulting in his death). "After those decisions, however, the Court changed course." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). Since *Carlson*, the Court has consistently declined to recognize an implied damages remedy under the Constitution, and instead has noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1855, 1857. *See also Silva v. United States*, 45 F.4th 1134, 1138-1141 (10th Cir. 2022) (describing the creation, expansion, and restriction of *Bivens*).

Earlier this year, the Supreme Court clarified the proper *Bivens* framework and, in doing so, declined to recognize a *Bivens* claim in "almost parallel circumstances" as those present in *Bivens*. *See Egbert*, 142 S. Ct. at 1805. Under the modern analytical framework, the Court's analysis of a proposed *Bivens* claim proceeds in two steps. *Id*. at 1803. First, the Court asks: "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id*. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1859-60) (alteration in original). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.' " *Id*. (quoting *Ziglar*, 137 S. Ct. at 1858). "[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the Courts." *Id*. at 1800.

*Egbert* issued several clarifications to this framework that multiply the obstacles a *Bivens* claimant faces. First, *Egbert* made clear that "[b]ecause recognizing a *Bivens* cause of action is an *extraordinary* act that places great stress on the separation of powers, [the Court has] a concomitant responsibility to evaluate *any* grounds that counsel against *Bivens* relief." *Id*. at 1806 n.3 (cleaned

up) (emphases added). Second, because even "potential special factors that previous *Bivens* cases did not consider" constitute a "new" context under the first prong, the two-part *Bivens* analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803 (quotation omitted). As recognized in Justice Gorsuch's concurrence, Congress will "surely" always be "better equipped" than the Court to make this determination. *Id.* at 1810 (J. Gorsuch, concurring). Third, *Bivens*, *Passman*, and *Carlson* "predate[] [the Court's] current approach to implied causes of action" and therefore should carry "little weight." *Id.* at 1808. Notably, this means that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809 (quoting *Ziglar*, 137 S. Ct. at 1859).

Collectively, these principles impart that Courts must *always* analyze whether a *Bivens* claim should be allowed to proceed, and that analysis must *always* consider special factors regarding separation of powers. Thus, a *Bivens* remedy will be unavailable "in most every case." *Id.* at 1803. Here, whether this Court analyzes Plaintiff's claim under the two-step approach or simply asks the essential question from *Egbert* of "whether there is any reason to think that Congress might be better equipped to create a damages remedy," dismissal is warranted.

### B. Plaintiff's allegations present a new context.

The Supreme Court has set a very low threshold for determining if a case presents a new *Bivens* context: "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859. The Court's understanding of a new context "is broad," and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized *Bivens* contexts. *Hernandez*, 140 S. Ct. at 743;

8

*Ziglar*, 137 S. Ct. at 1864-65. Indeed, even if both the "right at issue" and "mechanism of injury" are the same as in *Carlson*, *Passman*, or *Bivens*, the context in which the alleged violation arises may still differ. *Ziglar*, 137 S. Ct. at 1859 (rejecting test adopted by Ninth Circuit). Thus, it is improper to look at the right and mechanism of injury at a high-level. "[T]he new-context inquiry is easily satisfied" by even "small" differences between the claim at issue and the previously approved *Bivens* claims—"even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864-65. Finally, when a case involves "potential special factors that previous *Bivens* cases did not consider," this constitutes a "new context." *Egbert*, 142 S. Ct. at 1803.

Here, Plaintiff's claims present a new context both because they diverge factually from *Bivens*, *Passman*, and *Carlson* and because they raise potential special factors that the Court did not consider in *Carlson*.

Plaintiff's claims clearly bear no resemblance to *Bivens*, involving a Fourth Amendment claim for warrantless search and seizure at the plaintiff's home, or *Passman*, involving a Fifth Amendment due process claim for sex discrimination in the employment context. *See Bivens*, 403 U.S. 388; *Passman*, 442 U.S. 228. *Carlson* is the only prior *Bivens* case with any similarities to the current case as it involved an Eighth Amendment claim for deliberate indifference to a prisoner's medical needs. *See* 446 U.S. 14. But the circumstances at issue here differ meaningfully from *Carlson*.

In *Carlson*,[2] the mother of a deceased prisoner brought an action against federal officials after the prisoner, Joseph Jones, died as the result of prison officials' alleged conduct. There, Jones had previously been diagnosed as and was known to be a chronic asthmatic. *Id*. at 671. Shortly

---

[2] The Supreme Court's decision in *Carlson* did not provide a detailed recitation of the factual circumstances giving rise to Plaintiff's claims therein, making it necessary to turn to the decision on appeal. Thus, this memorandum cites to the Seventh Circuit's decision in *Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978).

before the events giving rise to his death, Jones' "asthmatic condition required hospitalization for eight days." *Id*. Upon discharge from the hospital, the treating physician recommended transfer to a more favorable climate, which was not done. *Id*. After returning from the outside hospital, Jones "was not given proper medication and did not receive the steroid treatments ordered by the physician" at the hospital. *Id*. Shortly thereafter, Jones was admitted to the prison hospital in serious condition with an asthmatic attack. *Id*. "Although he was in serious condition for some eight hours, no doctor saw him because none was on duty and none was called in," and the plaintiff alleged there was not an emergency procedure for times when a physician was not present. *Id*. The unlicensed nurse did not call a doctor, attempted to use equipment he had affirmatively been told was broken, and when Jones said the equipment was making his breathing worse, the nurse administered two injections of a drug contraindicated for a person suffering an asthmatic attack. *Id*. Approximately 30 minutes after the injection, Jones suffered respiratory arrest. The nurse and an officer then attempted to use emergency equipment, but neither knew how to operate the equipment. *Id*. Jones was taken to the hospital and pronounced dead upon arrival. *Id*.

Here, unlike in *Carlson*, Plaintiff allegedly suffered from an epidural abscess—a rare infection, invisible to the naked eye. *See, e.g.*, Epidural Abscess, Columbia Neurosurgery, available at https://www.neurosurgery.columbia.edu/patient-care/conditions/epidural-abscess (last visited Oct. 3, 2022). Plaintiff does not allege that he had previously been diagnosed with an epidural abscess, that he had been prescribed medication for his epidural abscess that BOP personnel failed to provide, or that any medical professional had recommended a course of action to treat the epidural abscess that BOP personnel failed to follow. In short, Plaintiff was suffering from an undiagnosed, invisible, and rare condition. Particularly given Plaintiff's recent fall and complaints of hip pain arising after that fall, the factual context here differs meaningfully from the

known condition suffered by Jones in *Carlson*. Accepting as true Plaintiff's allegations that the Individual Defendants ignored vague complaints of hip pain after a fall, that is a significantly different situation than present in *Carlson*. Finally, the inmate in *Carlson* was pronounced dead upon arrival at the hospital, and thus, unlike Plaintiff, did not have an opportunity to avail himself of alternative remedies or procedures for challenging the officials' alleged conduct.

Both before and after *Egbert*, courts have found a new context in Eight Amendment cases where the medical condition and care at issue were different from that at issue in *Carlson*. *See*, *e.g.*, *Martinez v. U.S. Bureau of Prisons*, 5:15-cv-02160, 2019 WL 5432052, at *8 (C.D. Cal. Aug. 20, 2019) (finding failure to provide adequate medical care claim "different in kind and severity"); *Washington v. Bureau of Prisons, et al.*, 5:16-3913, 2022 WL 3701577 (D.S.C. Aug. 26, 2022) (dismissing *Bivens* claims in light of *Egbert* after previously denying summary judgment on Eighth Amendment deliberate indifference claim where plaintiff had a chronic, non-fatal condition, and defendants were aware that a delay in medical treatment and improper administration of medication could result in pain and a diminishment of Plaintiff's vision).

Aside from the factual differences between this case and *Carlson*, an additional and independent basis for concluding this case presents a "new context" exists—the existence of special factors not considered by *Carlson*. As recognized on numerous occasions by the Supreme Court, "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.' " *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1860). In *Carlson*, the Court did not analyze or discuss the availability of BOP's Administrative Remedies Program (ARP). Thus, this case presents a "new context," given that the *Carlson* Court did not consider BOP's ARP, which the Tenth Circuit recently cited as foreclosing a *Bivens* remedy. *See Silva*, 45 F.4th at 1141. Likewise, that Congress enacted the PLRA more than 15 years after the Supreme

Court's decision in *Carlson* yet did not provide for a private cause of action against individual officials, offers an additional special factor for consideration.

Finally, as the *Egbert* Court clarified, "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." 142 S. Ct. at 1809. Thus, even if this case presents "parallel circumstances" as *Carlson*, this Court must nevertheless consider the second step and ask whether "*any* rational reason (even one)" exists to think that Congress is better suited to weigh the costs and benefits of allowing this action to proceed. *Id.* at 1805. *See also Washington*, 2022 WL 3701577, at *5 (concluding that Eighth Amendment *Bivens* claims against BOP officials could not go forward in light of *Egbert*).

### C. *Special factors counsel against authorizing Plaintiff's* **Bivens** *claims to proceed.*

This case presents "special factors" indicating that Congress is better suited than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803. As explained by the *Egbert* Court:

> The *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U. S., at ----, 137 S. Ct., at 1858. Thus, a court should not inquire, as the Court of Appeals did here, whether *Bivens* relief is appropriate in light of the balance of circumstances in the "particular case." *Stanley*, 483 U.S. at 683, 107 S. Ct. 3054. A court inevitably will "impai[r]" governmental interests, and thereby frustrate Congress' policymaking role, if it applies the " 'special factors' analysis" at such a narrow "leve[l] of generality." *Id.*, at 681, 107 S. Ct. 3054. Rather, under the proper approach, a court must ask "[m]ore broadly" if there is any reason to think that "judicial intrusion" into a given field might be "harmful" or "inappropriate." *Ibid.* If so, or even if there is the "*potential*" for such consequences, a court cannot afford a plaintiff a *Bivens* remedy. *Ziglar*, 582 U. S., at ----, ----, 137 S. Ct., at 1859-1860, 1864-1865 (emphasis added).

*Egbert*, 142 S. Ct. at 1805–06 (emphases in original).

Courts have recognized at least three special factors that weigh against recognition of a *Bivens* remedy—each counsels against recognizing a Bivens remedy here. First, the Supreme Court recognizes that the existence of "*any* alternative, existing process for protecting" the interests of the injured party "*alone* may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S. Ct. at 1858 (citation omitted) (emphases added). "So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807 (emphasis added).

Second, if congressional interest in the relevant area has been "frequent and intense," yet Congress never created an individual-capacity damages remedy, this suggests that Congress may disfavor the Judiciary creating one itself. *See Ziglar*, 137 S. Ct. at 1862 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)) (declining to extend *Bivens* remedy for unconstitutional conditions of confinement where Congress had passed significant anti-terrorism legislation without creating a damages remedy). There is even greater cause for hesitation in this context if Congress has also "designed its regulatory authority in a guarded way" by granting discretion over decision-making to an agency. *Id.* at 1858 (citing examples); *see also Wilkie*, 551 U.S. at 561 (rejecting *Bivens* remedy in part because Bureau of Land Management had "discretionary authority" over use of public land).

Third, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," another potential special factor that may "make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Ziglar*, 137 S. Ct at 1858.

Here, Plaintiff had alternative processes available to challenge the conduct at issue, Congress has extensively legislated in the area of prisoner rights and has not enacted an individual-capacity remedy, and recognizing a remedy in this context would impact government operations systemwide. Any one of these special factors is sufficient alone to warrant dismissal of Plaintiff's *Bivens* claims. *See Silva*, 45 F.4th at 1141 (affirming dismissal after analyzing only one alternative process available to the plaintiff).

   *1. Alternative remedial processes exist to safeguard the quality of care at BOP facilities, to deter potentially unconstitutional behavior, and to compensate prisoners for past injuries from inadequate medical care.*

"*Bivens* is concerned *solely* with deterring the unconstitutional acts of individual officers." *Egbert*, 142 S. Ct. at 1806 (quotation omitted) (emphasis added). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress." *Ziglar*, 137 S. Ct. at 1858. Thus, "if Congress has created '*any* alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Wilkie*, 551 U.S. at 550) (alterations in original) (emphasis added). Indeed, "[i]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856.

BOP's Administrative Remedies Program (ARP) is an alternative, existing process to protect an inmate's interests and deter unconstitutional actions of officers. *See* 28 C.F.R. Part 542, Subpart B. ARP is available both to inmates and "to former inmates for issues that arose during

their confinement." 28 C.F.R. § 542.10(b). Here, Plaintiff could have sought review of the Individual Defendants' alleged actions through the BOP's ARP. Under *Silva* and *Egbert*, the availability of this alternative process alone forecloses recognition of a *Bivens* claim.

In *Silva*, the Tenth Circuit affirmed dismissal of an Eighth Amendment *Bivens* claim based on excessive force. *See* 45 F.4th 1134. In doing so, the Court analyzed the history of *Bivens* claims, and identified its key takeaways from *Egbert*: (1) that there is "no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is *impermissible in virtually all circumstances*," and (2) "courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs." *Id.* at 1140-41 (quoting *Egbert*, 142 S. Ct. at 1803, 1804) (alteration and second emphasis in original). In applying *Egbert*, the Tenth Circuit easily concluded that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim," and declined to address the alternate grounds identified by the District Court for dismissal as "unnecessary."[3] *Id.* at 1141. Because the availability of ARP alone precludes Plaintiff's claim under binding Tenth Circuit precedent, the Court's inquiry may end here.

Still, another alternative remedy exists—the FTCA. In the wake of *Ziglar*, numerous Courts have held that the FTCA provides a sufficient alternative remedy. *See*, *e.g.*, *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021) (concluding that by also suing under the FTCA the plaintiff's "own conduct shows there is an alternative remedial scheme

---

[3] After determining ARP provided an alternative remedy, the Tenth Circuit declined to "address whether the other remedies presented in the parties' briefs and considered by the district court below qualify as adequate alternatives for *Bivens* because that discussion is unnecessary." *Id.* at *fn. 5. It also declined to "wade into the other independently sufficient grounds for disposing of [the] appeal, namely, 'whether there is any reason to think that Congress might be better equipped to create a damages remedy.' " *Id.*

for his claims"); *Adams v. Martinez*, No. 15-CV-2629, 2022 WL 3645976, at *3-4 (D. Colo. Aug. 24, 2022) (finding numerous adequate remedies for Eighth Amendment claim, including as "most relevant" that plaintiff could seek relief under FTCA for alleged actions of BOP officers); *Davis v. Greer*, No. 21 C 0995, 2022 WL 2460782, at *2 (N.D. Ill. July 6, 2022) (recognizing FTCA and prison administrative grievance process as alternative processes and declining to recognize *Bivens* claim); *Snowden v. Henning*, No. 19-CV-1322, 2021 WL 806724, at *4-5 (S.D. Ill. Mar. 3, 2021) (finding availability of FTCA as "potential alternative remedy militates against expansion of a *Bivens* remedy" and rejecting plaintiff's arguments that *Carlson* forecloses this finding); *Silva v. United States*, No. 19-cv-2563, 2020 WL 7706785, at *6 (D. Colo. Dec. 29, 2020) (recognizing FTCA as alternative remedy and special factor weighing "against extending a *Bivens* remedy"); *Turkmen v. Ashcroft*, No. 02-CV-2307, 2018 WL 4026734, at *10 (E.D.N.Y. Aug. 13, 2018) (finding the FTCA provides an alternative remedy and noting that the Supreme Court's statement in *Carlson* regarding the FTCA "cannot survive *Ziglar*"); *Huckaby v. Bradley*, No. 1:16-cv-4327, 2018 WL 2002790, at *6 (D.N.J. Apr. 30, 2018) (recognizing plaintiff brought separate FTCA suit based on the same facts and seeking the same relief, and concluding FTCA weighed against recognizing a *Bivens* remedy); *Morgan v. Shivers*, No. 1:14-cv-7921, 2018 WL 618451, at *5-6 (S.D.N.Y. Jan. 29, 2018) (finding FTCA served as an alternative remedy and counselled hesitation in extending an implied damages remedy); *Abdoulaye v. Cimaglia*, No. 15-cv-5921, 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 29, 2018) (noting plaintiff was pursing FTCA claim based on same allegations, which counselled against recognizing *Bivens* remedy).

In *Carlson*, the Supreme Court, citing *Bivens* and *Passman*, noted that a *Bivens* claim may be defeated if "Congress has provided an alternative remedy which it *explicitly* declared to be a *substitute* for recovery directly under the Constitution *and* viewed as equally effective." 446 U.S.

at 18-19. This language from *Carlson*, however, is no longer good law. The Supreme Court has more recently clarified that "if Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason" not to recognize a *Bivens* claim, suggested that *Bivens*, *Passman*, and *Carlson* carry "little weight," and noted that even if a case presents parallel circumstances to one of these precedents, it still must satisfy the modern framework. *Ziglar*, 137 S. Ct. at 1858 (internal quotations and citations omitted); *Egbert*, 142 S. Ct. at 1808. Under the modern framework, the FTCA provides an alternative process foreclosing Plaintiff's *Bivens* claims. As other courts have recognized, "while the absence of an explicit declaration by Congress that the FTCA is intended to be a substitute for *Bivens* may have been dispositive to the Court that decided *Carlson*, that absence is of little significance after *Ziglar*." *Turkmen*, 2018 WL 4026734, at *10 (collecting cases that have "declined to permit *Bivens* claims to proceed because the FTCA provides an adequate alternative remedy").

Plaintiff has alternative remedial processes—whether through BOP's ARP or under the FTCA[4]—which preclude the Court's recognition of a *Bivens* claim here.

> 2. *Congressional action in the context of prison life has been "frequent and intense," yet Congress has not created a damages remedy for federal inmates beyond the FTCA and has delegated authority over administration of federal prisons and discipline of BOP employees to the executive branch.*

The Supreme Court instructs courts to refrain from extending *Bivens* if "legislative action suggest[s] that Congress does not want" such a remedy in a given context. *Ziglar*, 137 S. Ct. at 1865. And, as "in any inquiry respecting the likely or probable intent of Congress, the *silence* of Congress is relevant." *Id.* at 1862. Here, the silence is telling as Congress has never created a

---

[4] The fact that Plaintiff has also brought a claim under the FTCA seeking monetary relief based on the *exact* same factual allegations as supporting his *Bivens* claims suggests that Plaintiff will not be left without a remedy, if a remedy is appropriate. It also supports Defendants' argument that the FTCA is a sufficient alternative process in this context and therefore precludes Plaintiff's *Bivens* claim

damages remedy against BOP officials despite its "frequent and intense" interest in the administration of prisons. *Id.* at 1862 (noting that "Congress' failure to provide a damages remedy might be more than mere oversight, and its silence might be more than 'inadvertent,' " where "Congressional interest has been frequent and intense") (quotation omitted).

That Congress has legislated extensively regarding the rights and protections of incarcerated persons but has never created the remedy that Plaintiff now seeks from this Court strongly counsels hesitation. Nearly all aspects of the maintenance of federal prison institutions and the treatment, rights, and grievance procedures of persons incarcerated there are regulated by statute, including the provision of medical care. For example, the BOP is required to place prisoners in facilities where "the prisoner's mental and medical health needs" can be met, 18 U.S.C. § 3621, and to "provide for the safekeeping, care, and subsistence" of all prisoners, 18 U.SC. § 4042(a)(2). *See also* 42 U.S.C. § 250 (directing that the Public Health Service "shall supervise and furnish medical treatment and other necessary medical, psychiatric, and related technical and scientific services, authorized by section 4005 of title 18, in penal and correctional institutions of the United States"). But despite mandating adequate medical care, Congress has never opted to create an individual capacity cause of action authorizing federal prisoners to sue healthcare providers in their individual capacities when their services are perceived to fall short. Instead, Congress has delegated broad authority to the Attorney General over "[t]he control and management of Federal penal and correctional institutions." 18 U.S.C. § 4001(b)(1).[5]

---

[5] Notably, Congress has cabined the Attorney General's authority over state prisons to intervention in cases involving "egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm." 42 U.S.C. § 1997c(a)(1). This in keeping with Congress's different treatment of state prisons—where federal oversight is more limited and prisoners therefore may file private constitutional claims under § 1983 to protect their federal rights—and federal prisons—where the federal government has direct control over institutions and has authority to implement its own safeguards.

And rather than expand the scope of prisoner litigation, Congress passed the PLRA in 1995 to "limit litigation brought by prisoners." *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 171 (4th Cir. 1999); *see also Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999) (explaining that the PLRA is intended to "remove the federal district courts from the business of supervising the day-to-day operation" of prisons). As numerous courts have noted, "Congress paid close attention to inmate constitutional claims when it enacted the [PLRA] of 1995," but did not create a "standalone damages remedy against federal jailers." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (quoting *Ziglar*, 137 S. Ct. at 1865); *see also Butler v. S. Porter*, 999 F.3d 287, 294 (5th Cir. 2021) (making the same observation and rejecting *Bivens* remedy); *Crocker v. USP 1 Coleman*, No. 5:20-CV-568-CEM-PRL, 2022 WL 272173 (M.D. Fla. Jan. 6, 2022) (finding Congress' "choice, declining to provide standalone damages against the BOP, forecloses this Court from taking it upon itself to legislate monetary damages") (citations omitted).

Congress has thus had opportunities to authorize Plaintiff's proposed claim when legislating on multiple subjects—including prison medical care and prisoner litigation—but has always declined. This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy. "When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them. *Ziglar*, 137 S. Ct. at 1857 (internal quotations and citations omitted).

### 3. *Authorizing a* Bivens *claim of this nature would burden government operations systemwide.*

A final special factor is the increased burden it would place on government operations for this court—or any court—to authorize a damages remedy in a context that deviates even slightly from *Bivens*, *Davis*, or *Carlson*. As *Egbert* explained, "Congress is far more competent than the Judiciary" to weigh policy considerations such as "economic and governmental concerns,

administrative costs, and the impact on governmental operations systemwide" of implying a damages remedy. 142 S. Ct. at 1802-03 (cleaned up). Indeed, "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." *Id.* at 1803 (quoting *Ziglar*, 137 S. Ct. at 1858). "That uncertainty alone is a special factor that forecloses relief." *Id.* at 1804.

The BOP currently houses nearly 159,000 inmates, employs approximately 35,000 employees, and operates 122 institutions nationwide. Fed. Bureau of Prisons, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited Oct. 3, 2022); Fed. Bureau of Prisons, *About Our Facilities*, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited Oct. 3, 2022). With so many inmates to care for, BOP officials and healthcare providers face a voluminous quantity of medical encounters involving a myriad of medical issues. *See Health Management Resources*, https://www.bop.gov/resources/health_care_mngmt.jsp (last visited Oct. 3, 2022). Inevitably, some inmates will have complaints about the care they receive or disagree with a prescribed treatment. Whether and when these disputes should give rise to an individual-capacity damages claim—as opposed to being grieved through the ARP or the subject of an FTCA claim (or both)—is a nuanced policy question best left to Congress. *See Egbert*, 142 S. Ct. at 1810 (J. Gorsuch, concurring) ("Weighing the costs and benefits of new laws is the bread and butter of legislative committees. It has no place in federal courts charged with deciding cases and controversies under existing law."); *Ziglar*, 137 S. Ct. at 1856 (recognizing "[c]laims against federal officials often create substantial costs, in the form of defense and indemnification," and that Congress "has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government").

Under the Supreme Court's modern analytical framework, Plaintiff's *Bivens* claims against the Individual Defendants must fail. As demonstrated above, there are numerous reasons "to think that Congress might be better equipped to create a damages remedy" than the Court—this alone under *Egbert* and *Silva* warrants dismissal of Plaintiff's claims. Regardless, the two-step inquiry from *Ziglar* shows that an extension of *Bivens* to the present context would be improper. Due to the factual differences and additional special factors not considered in *Carlson*, this case presents a new context. And numerous special factors counsel against recognition of a *Bivens* remedy here. Accordingly, the Individual Defendants respectfully request that this Court dismiss Plaintiff's claims against them in whole.

## II.   The Individual Defendants are entitled to qualified immunity.

"The qualified-immunity doctrine protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)). "When a defendant raises the qualified-immunity defense, 'the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.' " *Id.* (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)); *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021). "The court may address these two prongs in either order." *Crane*, 15 F.4th at 1303. "When properly applied," qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff has not met the first prong of the qualified immunity analysis—he has not "plead[]
facts showing" that any of the Individual Defendants "violated a statutory or constitutional right."

*al-Kidd*, 563 U.S. at 735. Plaintiff has failed to specify the alleged conduct of each Defendant and has failed to plead facts that satisfy the subjective prong of a deliberate indifference claim.

> **A.** ***Plaintiff's collective allegations against the Individual Defendants do not satisfy the pleading standards and do not state a claim against such Individual Defendants.***

In analyzing the first prong at the motion to dismiss stage, Courts ask "whether the plaintiffs sufficiently alleged that the defendants violated a statutory or constitutional right." *Neiberger v. Hawkins*, 6 Fed. App'x 683, 685 (10th Cir. 2001). As the Tenth Circuit has recognized, while Courts do not apply "a heightened pleading standard," complaints "against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants," and thus, "[t]he *Twombly* standard may have greater bite in such contexts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citations omitted) (analyzing pleadings standards in a § 1983 context). Thus, where government officials are sued in their individual capacities, it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (citation omitted). "[C]ollective and generalized allegations . . . are insufficient." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249– 51 (10th Cir. 2020). "[F]ailure to make this showing . . . dooms [a plaintiff's] .. . claims and entitles defendants to qualified immunity." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013).

Plaintiff's factual allegations appear at paragraphs 15-25, and his legal conclusions regarding his *Bivens* claims appear at paragraphs 26-32. *See* Doc. 29. With the exception of Defendant Krock, Plaintiff fails to identify actions associated with any specific individual Defendant. Rather, just like the plaintiff in *Robbins*, because of Plaintiff's "use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction

as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250. For example, in his factual allegations, Plaintiff lists four nurse defendants, "possibly other medical staff," and three correctional officer defendants, and claims he repeatedly asked them "for medical assistance when they came to his cell to change his Lidocaine patch." Doc. 29, ¶¶ 18, 20. He vaguely asserts that "all Defendants witnessed Plaintiff's extreme medical distress," but does not provide any detail as to how each Defendant had notice of such "distress" or what type of distress they allegedly witnessed. Doc. 29, ¶ 21. And he asserts that six nurse defendants came to his "cell at least twice per day to administer medications" to his cellmate, and that he pleaded for "some help" and "they did nothing." Doc. 29, ¶ 22.

The allegations in Count I also fail to identify any Defendant by name and constitute mere legal conclusions and formulaic recitations of the elements of his claim. *See* Doc. 29, ¶ 28 ("All Defendants to whom this Count applies acted with deliberate disregard for the medical needs of Plaintiff . . ."); ¶ 29 ("All Defendants to whom this Count applies willfully denied Plaintiff adequate medical care and were deliberately indifferent to Plaintiff's medical needs," and "knew of, and disregarded, a substantial risk of serious harm to Plaintiff's health and safety.") A mere "formulaic recitation of the elements of a cause of action," is insufficient to push a claim into the realm of plausibility. *See Lynn v. Willnauer*, No. 5:19-cv-03117-HLT, 2021 WL 1390384, at *9 (D. Kan. Apr. 13, 2021).

Plaintiff fails to provide any factual allegations regarding Defendant Nurses Rice, Troll, Liggett, Hannah, Delgado, and Adams Drinkard, or regarding Defendant CO Ward, aside from the collective allegations in paragraphs 18, 20, and 22. And the only additional factual allegation regarding "one of the Rush brothers" is that Plaintiff's cellmate asked for help for Plaintiff, and

Plaintiff received help. Doc. 29, ¶ 23. Plaintiff has wholly failed to place these Individual Defendants on notice of "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quotation omitted). Accordingly, Plaintiff has failed to allege facts to show that any specific Individual Defendant violated his constitutional rights, and each is entitled to qualified immunity.

### B. Plaintiff's factual allegations, accepted as true, do not state a claim for deliberate indifference to a prisoner's medical needs.

Even accepting Plaintiff's allegations as true, those facts do not state a plausible claim for an Eighth Amendment violation based on deliberate indifference to a prisoner's medical needs. "The test for constitutional liability of prison officials 'involves both an objective and a subjective component.' " *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "The prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious,' " which is met if the medical need "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations omitted). "The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind," and "is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alteration in original).

Here, with the exception of Michelle Krock, Plaintiff collectively alleges that he either asked, pleaded, or begged Defendants for medical assistance and they provided none. Doc. 29, ¶¶

18, 20, 22.  Plaintiff wholly fails to allege facts to show that each Individual Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.  Such knowledge, and disregard thereof, is necessary to Plaintiff's deliberate indifference claim.  And while he categorically claims, "all Defendants witnessed Plaintiff's extreme medical distress," this hyperbolic and conclusory accusation lacks sufficient detail to put the Court or Defendants on notice of the basis for Plaintiff's claim.  *See Fryer*, 2022 WL 3211427, at *2 (explaining "conclusory statements are not entitled to the presumption of truth").  Indeed, this is not a situation where Plaintiff was suffering from an obvious medical emergency.  Rather, Plaintiff suffered from a rare condition invisible to the naked eye.  Plaintiff fails to allege facts that could support the subjective element of his Eighth Amendment claim—that each Defendant knew of and disregarded an excessive risk to his health.

Paragraphs 19 and 23 of the Fifth Amended Complaint are the only paragraphs that include specific factual allegations against a specific Defendant—Michelle Krock—and they include allegations regarding two encounters with Krock.[6]  Even accepting these factual allegations as true, they fail to give rise to an Eighth Amendment violation.  Rather, they show that when Plaintiff complained about his hip hurting after a fall, believing he had "a bone loose in his hip," Nurse Krock evaluated Plaintiff, found that medication was contraindicated by his recent blood work, and prescribed warm showers, stretching, and to not overuse his hip.  Doc. 29, ¶ 19.  Then, when Plaintiff presented to Defendant Krock approximately one week later, reportedly unable to "move or feel from his abdomen to his toes," he was immediately sent to St. Luke's Hospital.  Plaintiff fails to plead facts showing that Defendant Krock knew of a serious risk to Plaintiff and

---

[6] As noted above, while Paragraph 23 also references "one of the Rush brothers," it does not specify which "Rush brother" and, summarized, asserts that after Plaintiff's cellmate asked for help, help was rendered. Doc. 29, ¶ 23.  This allegation falls far short of showing deliberate indifference to Plaintiff's medical needs.

disregarded that risk. Rather, these allegations at most allege negligent care. But a "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *See Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)); *Mata*, 427 F.3d at 751 (recognizing if "necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim") (citations omitted).

Plaintiff has failed to plead facts sufficient to support an inference that any Individual Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," or that any Individual Defendant drew such inference. Rather, Plaintiff merely notes that he asked numerous defendants for medical assistance, and none was provided, or when assistance was provided, that he was unhappy with that assistance. Such general allegations are insufficient to state a claim for deliberate indifference, and Defendants are entitled to qualified immunity.

### III.    Plaintiff's claims against Defendants Krock, Thomas Rush, Lloyd Rush, Ward, and Adams Drinkard are barred by the statute of limitations.

In this case, the facts presented in Plaintiff's Fifth Amended Complaint make clear that his *Bivens* claim accrued (at the latest) on November 22, 2019, when Plaintiff was taken to St. Luke's Hospital. (Doc. 29, ¶¶ 23-24). Thus, the statute of limitation period applicable to Plaintiff's *Bivens* claim expired on November 22, 2021, at the latest.[7] *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (noting *Bivens* claims have the same statute of limitations as an action under 42 U.S.C. § 1983); *Brown v. Unified Sch. Dist. 501, Topeka Pub.*

---

[7] For purposes of this motion to dismiss only, Defendants rely upon this date. Discovery may reveal, however, that Plaintiff's *Bivens* claim accrued as to certain individual defendants on an earlier date. Therefore, Defendants expressly reserve the right to seek dismissal as to other Defendants at a future date.

*Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (identifying a two-year statute of limitations for § 1983 claims brought in the District of Kansas); *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (explaining that federal law governs when the limitations period begins to run on a *Bivens* claim and noting it "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action"). As such, Plaintiff must have filed his claims against each Individual Defendant on or before November 22, 2021, or his subsequent amendments must relate back under Federal Rule of Civil Procedure 15(c).

"In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to 'relate back' to the conduct alleged in the timely original complaint." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012). Rule 15(c)(1)(C), allows for relation back when there is a *mistake* concerning the proper party's identity, and provides:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

"[T]he Advisory Committee Notes to Rule [15(c)(1)(C)] indicate that 'the mistake proviso [was included] . . . in order to resolve the problem of a misnamed defendant and allow a party to correct a formal defect such as a misnomer or misidentification.' " *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) (citation omitted). "Thus, the rule is meant to allow an amendment changing the name of a [defendant] to relate back to the original complaint only if the change is the result of such a formal defect." *Id.* (citation and quotations omitted).

Courts in the Tenth Circuit have long recognized that a " 'plaintiff's designation of an unknown defendant . . . in the original complaint is not a formal defect of the type [Rule 15(c)(1)(C)] was meant to address,' and a later amendment that specifically names that defendant does not relate back to the original complaint." *Bell v. City of Topeka, Kan.*, 279 Fed. App'x 689, 692 (10th Cir. 2008) (quoting *Garrett*, 362 F.3d at 696).

Here, Plaintiff's decision to initially identify Defendants Krock, Thomas Rush, Lloyd Rush, Ward, and Adams Drinkard using nominal placeholders was not based on error, misconception, misunderstanding, or erroneous belief. It was based upon his lack of knowledge regarding those Defendants' identities. Because "a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule [15(c)(1)(C)(ii) ]," Plaintiff's *Bivens* claim against those Defendants should not relate back to the filing of his original Complaint. *Garrett*, 362 F.3d at 696.

Michelle Krock appears for the first time in Plaintiff's Second Amended Complaint, filed December 2, 2021. *Compare* Docs. 1, 3, and 9. Neither the original nor First Amended Complaint identified Defendant Krock in any way. Plaintiff cannot maintain a claim arising from the alleged events in November 2019 against Defendant Krock because any such claims are barred by the statute of limitations.

This Court likewise should not allow Plaintiff's December 2, 2019, identification of Defendant Thomas Rush and his February 11, 2022, identification of Defendant Lloyd Rush to relate back to the original or First Amended Complaint. Plaintiff listed "CO Rush-1 (first name unknown)" and "CO Rush-2 (first name unknown)" in his original, first, and second amended complaints. *See* Docs. 1, 3, & 9. While limited caselaw exists on the issue, a court in the District of New Mexico has determined that first name unknown and last name unknown placeholders

should be treated the same as "John Doe" defendants. *Butchard v. Cty. of Dona Ana*, 287 F.R.D. 666, 671 (D.N.M. 2012) (concluding that it is "logical to treat a FNU/LNU defendant like a Doe defendant for the purpose of the relation back doctrine" and concluding "Defendants are correct that the relation-back doctrine would not apply"). Indeed, under Rule 15(c), Plaintiff's failure to identify Thomas Rush and Lloyd Rush was not based on a "mistake" concerning their identities, but rather, based on a lack of knowledge.[8]

For the same reasons as identified above and in *Butchard*, the Court should find that Plaintiff's identification of Defendants Ward and Adams Drinkard in his December 13, 2021, Third Amended Complaint does not relate back to a prior, timely complaint. Plaintiff identifies a "CO Ward (first name unknown)" and a "Jail Nurse S. Adams (full first name unknown)" in his First Amended Complaint, filed November 4, 2021, and in his December 2, 2021, Second Amended Complaint. Plaintiff's use of the placeholder "first name unknown" and "full first name unknown" was not due to a mistake, but rather, due to a lack of knowledge.[9]

Finally, nothing suggests that any tolling principles may apply here, and Plaintiff has made no attempt to plead facts to support application of a tolling doctrine. "[W]hen the dates given in the complaint make clear that the right sued upon has been extinguished"—as is the case here— "the *plaintiff* has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Prop, Inc.*, 627 F.2d 1036, 1041, n. 4 (10th Cir. 1980) (emphasis added) (noting SOL

---

[8] While Plaintiff may argue that his identification of *Eric* Rush instead of *Lloyd* Rush was a "mistake" as contemplated by Rule 15(c), Plaintiff did not identify Eric Rush until December 13, 2021, and thus, even if his identification of Lloyd Rush could relate back to the identification of Eric Rush, it is still untimely.

[9] Unlike Plaintiff's December 13, 2021 identification of Defendant Adams Drinkard as "Shanna Drinkard-Adams"—which arguably constitutes a true "mistake"—merely identifying an "S. Adams" prior to expiration of the statute of limitations is not a mistake, but a lack of knowledge.

defenses may be resolved at motion to dismiss stage "when the dates given in the complaint make clear that the right sued upon has been extinguished").  Plaintiff has not done so.

## Conclusion

For the foregoing reasons, all claims against the Individual Defendants should be dismissed, and only the FTCA claim against the United States should remain.  Accordingly, the Individual Defendants respectfully request that this Court dismiss all claims against them.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney
District of Kansas

s/ *Sarah Burch Macke*
Sarah Burch Macke, KS #25948
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Telephone:  (316) 269-6481
Facsimile:  (316) 269-6484
E-mail: sarah.macke@usdoj.gov
   *Attorneys for the Individual Defendants*

CERTIFICATE OF MAILING

I hereby certify that on October 3, 2022, the foregoing was electronically filed with the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

s/ *Sarah Burch Macke*
Sarah Burch Macke
Assistant United States Attorney